# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**BAUTISTA CAYMAN ASSET COMPANY,**

    Bautista,

    v.

**FRANCISCO I. VILARIÑO- RODRIGUEZ, et al.,**

    Defendants.

CIV. NO. 16-3070 (PG)

## OPINION AND ORDER

On December 12, 2016, plaintiff Bautista Cayman Asset Company ("Bautista") filed a complaint for collection of monies and foreclosure of collateral against defendants Francisco I. Vilariño-Rodriguez, his wife Digna M. Torres-Ortiz, and the Vilariño-Rodriguez–Torres-Ortiz conjugal partnership (collectively, "defendants"). See Docket No. 1. On March 5, 2018, Bautista moved for summary judgment. See Docket No. 29. Because defendants failed to timely respond, this court deemed Bautista's motion for summary judgment as unopposed. See Docket No. 32. For the reasons specified below, this court **GRANTS** Bautista's unopposed motion for summary judgment.

## I. UNCONTESTED MATERIAL FACTS

The court adopts these facts, which are duly supported in the record, from Bautista's unopposed statement of uncontested material facts ("SUMF").

On September 17, 2008, defendants executed a Loan Agreement with Doral Bank ("Doral"), pursuant to which Doral provided to them a loan facility in the amount of $1,497,000.00, with interest at an annual rate of 7.25% ("Loan 1").[1] See SUMF ¶ 3. A promissory note was issued to the order of Doral, and subsequently endorsed to Bautista. See SUMF ¶ 4. On the same date, defendants

---

[1] Bautista's SUMF provides an interest at an annual rate of 7.5%. See SUMF ¶ 3. The loan agreement, however, clearly sets forth a rate of 7.25%. See Exhibit 1(b).

executed two pledge agreements through which Doral acquired pledge and security interest over five different mortgage notes (with their respective mortgage deeds). See SUMF ¶¶ 7-13. Doral and defendants also executed an agreement for a line of credit in the principal amount of $75,000.00 with an interest rate of 2.00% over the prime rate of interest published by Bloomberg Information Services in New York ("Loan 2"). See SUMF ¶ 14.

On October 29, 2013, Doral and defendants executed an Amended and Restated Loan Agreement ("ARLA") to consolidate Loan 1 and Loan 2. See SUMF ¶ 15. In executing the ARLA, defendants recognized that: the principal and interest on the debt pursuant to Loan 1 and Loan 2 existing at the date of execution of said agreement amounted to $1,436,242.00 and $86,202.83, respectively; that such debt was due and payable; and that there was no defense or counterclaim against the collection of such debt and, if any, the same was waived. See SUMF ¶ 17. The ARLA consolidated the outstanding debts into a single loan facility, adjusted the interest charge, and extended the maturity date of the loan facility. See SUMF ¶ 18.

Under the terms and conditions of the ARLA, in case of default, defendants would be responsible for payment of interest on the principal due at a rate of default of the applicable interest rate plus five percent per annum and for the payment of relevant charges under the terms of the agreement, ten days after the event of default. See SUMF ¶ 27. Moreover, the loan would be in effect until the date of termination, unless terminated or accelerated by the lender in the event of default. See SUMF ¶ 28. In the event of default, all monies owed to lender by defendants would become due and payable without prior requirement or notice. See SUMF ¶ 28.

On February 27, 2015, the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico closed Doral and appointed the Federal Deposit Insurance Corporation as its receiver. See SUMF ¶ 29. On March 27, 2015, Bautista acquired the loan and collateral instruments described above. See SUMF ¶ 29.

Defendants failed to make the payments as agreed upon in the ARLA. See SUMF ¶ 30. On August 23, 2016, Bautista served defendants with a notice of default and demanded immediate

payment of the full amounts due, including accrued interest and charges. See SUMF ¶ 30. To date, defendants have not cured their default. See SUMF ¶ 31.

## II. STANDARD OF REVIEW

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). The Supreme Court encourages employing summary judgment in federal courts- it "[avoids] full blown trials in unwinnable cases, ... [conserves] parties' time and money, and [permits] the court to husband scarce judicial resources." McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 314 (1st Cir. 1995). See also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). See also Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Anderson Plumbing Productions Inc., 530 U.S. 133, 135 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, not of a judge. See id.

In short, when there is a genuine dispute as to any material fact, and when a court would be required to make credibility determinations, weigh the evidence, or draw legitimate inferences from the facts in order to adjudicate a controversy, summary judgment will not be granted. While no legitimate inferences can be drawn, the court will construe all reasonable inferences in favor of the nonmoving party. See Stoutt v. Banco Popular de Puerto Rico, 158 F. Supp. 2d 167, 171 (D.P.R.

2001). Still, the nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." <u>Iverson v. City of Boston</u>, 452 F.3d 94, 108 (1st Cir. 2006).

## III. <u>DISCUSSION</u>

Under Puerto Rico law, "obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." Laws of P.R. Ann. tit. 31, § 2994.[2] A loan agreement is an obligation in which "one of the parties delivers to the other … money … under the condition to return and equal amount of the same kind and quality." <u>Id.</u> § 4511. Courts cannot release a party from fulfilling what it agreed to fulfill through a legal and valid contract. <u>See</u> <u>Matos, Gonzalez v. S.L.G. Rivera-Freytes</u>, 181 P.R. Dec. 835, 843 (2011); <u>Cervecería Corona Inc. v. Commonwealth Ins. Co.</u>, 115 P.R. Dec. 345 (1984). Thus, a creditor has the right to demand full payment of an outstanding debt. <u>See</u> Laws of P.R. Ann. tit. 31, § 3171.

"A mortgage is a guarantee of a debt, which in turn is secured by a particular property." <u>CitiMortgage, Inc. v. Rivera-Anabitate</u>, 39 F. Supp. 3d 152, 154 (D.P.R. 2014) (quotations omitted). "A mortgage creditor may seek foreclosure if the debtor defaults on the payment of any principal or interest due." <u>Id.</u> (<u>citing</u> <u>Treco, Inc. v. Marina de Palmas, Inc.</u>, 626 F. Supp. 335, 342 (D.P.R.1986)).

Bautista is undisputedly entitled to recover the amounts owed in the promissory note and guaranteed in the mortgage notes. Defendants entered into a loan agreement and signed a promissory note. They guaranteed their debt through five mortgages instituted on five properties. Then, they defaulted on their contractual obligations. They have, to this date, failed to cure the

---

[2] Because this is a diversity jurisdiction case, Puerto Rico law applies. <u>See</u> <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>, 559 U.S. 393, 417 (2010) (<u>quoting</u> <u>Hanna v. Plumer</u>, 380 U.S. 460, 465 (1965)).

existing and continuing defaults on the same. Bautista, accordingly, has the right to collect the monies owed and, if needed, foreclose the mortgaged properties.

As such, summary judgment is granted – no material facts remain in controversy, and Bautista is entitled to judgment as a matter of law.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Bautista's motion for summary judgment is **GRANTED**. Judgment will be entered accordingly.

Defendants are ordered to pay Bautista the following sums due as of the date of their default, notified on August 23, 2016: $1,505,393.77 in aggregated principal, with accrued interest which continues to accrue until full payment of the debt at the rates specified in the ARLA, and any other charges, fees, or costs stipulated to in that agreement or other mortgage documents.

Furthermore, in default of the payment of the sums herein specified or of any part thereof, within fourteen (14) days from the date of entry of judgment, the mortgaged properties referred to above (<u>See</u> Exhibit Nos. 5(b), 6(b), 7(b), 8(b), 9(b), 10(b), 11(b), 12(b), 13(b), 14(b)), shall be sold at public auction to the highest bidder therefor, without an appraisal or right of redemption for the payment of Bautista's mortgage within the limits secured thereby.

Upon Bautista's compliance with Fed. R. Civ. P. 53, the court may appoint a Special Master to conduct the sales, but the Special Master shall not proceed to carry them out, or do anything in connection with them, until further order by this court and under the form and conditions to be directed by the court. The sales to be conducted by the appointed Special Master shall be subject to the confirmation of the court, and the purchaser or purchasers of the properties shall be entitled to receive their possession. The minimum bid to be accepted at the first public sale will be in accordance with the mortgage deeds. Any funds derived from the sales to be made in accordance with the terms of judgment and such further orders of this Court shall be applied as follows:

a) To the payment of all proper expenses attendant upon said sales, including the expenses, outlays and compensation of the Special Master appointed herein, after said compensation and expenses

shall have been fixed and approved by the court, all said expenses to be deducted from the sum provided in the deed of mortgage for costs, charges and disbursements, expenses and attorneys' fees.

b) To the payment of all expenses or advances made by Bautista.

c) To the payment to Bautista of the amount of $1,505,393.77 in aggregated principal, with accrued interest which continues to accrue until full payment of the debt at the rates specified in the ARLA, and any other charges, fees, or costs stipulated to in that agreement or other mortgage documents.

d) If after making all the above payments there shall be a surplus, said surplus shall be delivered to the Clerk of this Court, subject to further orders of the court.

e) If after making all those payments there is a deficiency, Bautista may seek further orders by the court to collect the deficiency from Defendants.

Bautista in these proceedings may solicit from this court such further orders, as it may deem advisable to its interests, in accordance with the terms of the judgment, including all available remedies for the enforcement of a money judgment.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, December 5, 2018.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PÉREZ-GIMÉNEZ**
**SENIOR U.S. DISTRICT JUDGE**